THE STATE OF OHIO, APPELLEE, *v.* RENTEX INC., ET AL.,
APPELLANTS.

[Cite as State v. Rentex, Inc. (1977), 51 Ohio App. 2d 57.]

(No. 35576—Decided March 10, 1977.)

*Mr. William J. Brown,* attorney general, and *Mr. Thomas E. Turk,* for appellee.

*Mr. James G. Gowan,* for appellant.

DAY, J. This case involves the construction of R. C. 4735.01, *et seq.,* which provide a licensing scheme for the real estate brokerage industry. Plaintiff (appellee), the Ohio Real Estate Commission, filed a complaint in the Franklin County Court of Common Pleas on February 19, 1974,[1] requesting the court to issue preliminary and permanent injunctions prohibiting defendants (appellants), Rentex, Inc., and its agents, servants, employees, and representatives, from engaging in the practice of real estate without first being licensed pursuant to R. C. 4735.01, *et seq.* Following a hearing on all issues, the court ruled that appellants were acting as real estate brokers within the meaning of R. C. 4735.01 *et seq.,* and that they were therefore enjoined from further operation until they conformed with the licensing requirements of the statute. Appellants filed a timely notice of appeal to this court.

Rentex, Inc., franchises approximately fifty offices throughout the United States and Canada. The franchises charge a fee to the customer and in return provide a list of prospective rental properties. The franchises acquire rental information to develop such lists by contacting landlords, property management companies, realtors, and any other likely source. The information is solicited, collected, and listed prior to acquiring a customer but in the expectation that there will be a buyer who will pay a fee for the list. The compiling of the information continues after a fee is paid to update the listings. The information solicited from prospective lessors and made available to franchise customers includes: (a) the nature of the property for rent; (b) the dates available; (c) a general description of the area of town where the property is located; (d) the amount of the rent; (e) the

number of bedrooms; (f) whether the property is furnished or unfurnished; (g) whether children or pets are permitted; (h) whether the rental is an apartment, up or down duplex, or other form of property; (i) the address of the property and the lessor's phone number (as well as other miscellaneous items of information).

The appellants receive from the customers their requirements for housing, and give them lists of available rentals that correspond to the dictated requirements.

The appellants do not act as a fiduciary or agent, do not negotiate or draft rental contracts, do not receive payments from the prospective lessors of property, and do not appraise any of the realty.

All the Rentex franchises offer substantially the same service.

### I.

The appellants' assignments of error are set out in footnote 2. The first poses the dispositive issue in the case.

That issue in question form is:

Does R. C. 4735.01, *et seq.*, reach and regulate the real estate information service performed by the appellants?[1]

For reasons assessed below the question is answered "No." This disposition makes it unnecessary to reach the constitutional challenges raised by the second and third assignments of error.

### II.

The real estate brokerage business is specialized. The legislation designed to regulate it employs the technical language developed in the specialty. Language so deployed in the statute requires a technical interpretation[3] in the light of the statutory purpose.

---

[1]The case was transferred to the Court of Common Pleas of Cuyahoga County upon defendant's motion for a change of venue. Plaintiff's motion for a preliminary injunction and the claim for a permanent injunction were consolidated for hearing which was held on April 16, 1975.

[2]"I. The trial court erred in ruling that the appellants' business constitutes the practice of real estate as defined by R. C. §4735.01.

"II. The trial court erred in not holding that R. C. §4735.01 *et seq.* are unconstitutional as applied to Rentex.

"A. The statutes as applied to Rentex are unconstitutional in that

## III.

There are only a few words in the statute that have the slightest conceivable reference to the business of appellant Rentex or its franchises. This fragile reference is destroyed when the technical meanings of the terms are considered.

For instance, the definitional listings in R. C. 4735.01 (A)(3) and (7)[4] provide that listing, offering or agreeing to list or assisting in the procuring of prospects for sale, rent, or exchange of real estate is characteristic of covered real estate brokering. These provisions come closest to the appellants' activity but fall short of it in any realistic or technical sense.[5] The terms "listing" and "procuring"

they are unrelated to the public health, safety or welfare and therefore overreach the permissible scope of the police power.

"B. The statutes as applied to Rentex are unconstitutional in that they violate appellants' right to freedom of the press as guaranteed by the United States Constitution, Amendments I and XIV, and the Ohio Constitution, Article I, Section II [*sic*].

"C. The statutes as applied to Rentex are unconstitutional in that they violate appellants' right to Equal Protection of the laws as guaranteed by the United States Constitution, Amendment XIV, and the Ohio Constitution, Article I, Section 2.

"III. The trial court erred in failing to interpret R. C. §4735.01 in a manner which would render it constitutional."

[5]R. C. 1.42 reads: "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

[4]"(A) 'Real estate broker' includes any person * * * or corporation * * * who for another * * * and who for a fee * * *

"(3) Lists or offers or attempts or agrees to list, or auctions, or offers or attempts or agrees to auction, any real estate, or the improvements thereon * * *

"(7) Assists or directs in the procuring of prospects or the negotiation or closing of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate * * *."

[5]The trial court concluded that appellants' activities were within R. C. 4735.01(A)(3), (6), (7), and (9) and 4735.01(C). Subsections (A)(6) and (9) and (C) bear an even more remote relevance to appellants' business than subsections (A)(3) and (7), for R. C. 4735.01 (A)(6) and (9) provide:

are words of art in the real estate business. Both imply an agency relationship between the seller and broker with the purpose of effecting a juncture between buyers and sellers of real property with an ultimate pecuniary reward to the broker for his part in bringing the parties together. A successful sale (or rental) is desired but not necessarily essential in every situation for the broker to earn his fee.

In contrast, the appellants have no agency relationship to anyone, nor concern with any aspect of the sale of anything but the information which they gather. When that sale is concluded so is appellants' interest. They offer nothing else for sale and nothing for rent. Thus, it is clear that the appellants' services closely parallel the function of newspaper want ads but have no connection with real estate brokering. Their only nexus with real estate at all is to sell somewhat elaborate descriptions of available rental property. There it ends.

A conclusion of non-coverage is underwritten by the

"(A) 'Real estate broker' includes any person * * * or corporation * * * *who for another* * * * and who for a fee * * *

"(6) *Advertises* or holds himself, itself, or themselves out as *engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate* * * *"

"(9) *Is engaged* in the business of charging an advance fee or contracting for collection of a fee in connection with any contact whereby *he undertakes primarily to promote the sale, exchange, purchase, rental or leasing of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both.*" (Emphasis added.)

R. C. 4735.01(C) provides:

"'Real estate salesman' means any person associated with a licensed real estate broker *to do or to deal in any acts or transactions set out or comprehended by the definition of a real estate broker* as set forth in this section, for compensation or otherwise." (Emphasis added.)

Obviously, appellants do not advertise themselves as selling, exchanging, purchasing, renting, or leasing real estate. The fee they charge for information does not *primarily promote* "the sale, exchange, purchase, rental, or leasing of real estate." Neither are they associated with a licensed real estate broker in any way. They do call brokers to gather information but no compensation flows to either the appellants or the brokers. These facts negate the application of the statute.

obvious irrelevance to appellants' business of the complex regulations applicable to brokers under the statute.[c]

## IV.

The conclusion that R. C. 4735.01, *et seq.*, does not govern service of the kind Rentex and its franchises render reflects a very narrow "no coverage" interpretation. The decision does not reach the question of the constitutionally permissible scope of the police power should the legislature determine to exercise it to regulate the service industry involved in this case.

Reversed and judgment entered for the defendant-appellants.

*Judgment reversed.*

JACKSON and PATTON, JJ., concur.

---

[c]For example, R. C. 4735.07 regulating examinations for brokers' licenses mandates that a person taking the examination must, among other requirements, meet these:

"(E) Has been a licensed real estate salesman in this state for at least two years, and during at least two of the five years preceding his application, has worked as a licensed real estate salesman for an average of at least thirty hours per week, and has completed one of the following:

"(1) At least thirty real estate transactions, in which property was sold for another by the applicant. At least five of the thirty transactions shall have involved the sale of previously occupied residential properties by the applicant.

"(2) Such equivalent experience as is defined by rules adopted by the real estate commission.

"(F) Has successfully completed at an institution of higher education:

"(1) Thirty hours of classroom instruction in real estate practice;

"(2) Thirty hours of classroom instruction in real estate law, including instruction in municipal, state, and federal civil rights law, except that this requirement shall not apply to an applicant who is admitted to practice before the supreme court;

"(3) Thirty hours of classroom instruction in real estate appraisal;

"(4) Thirty hours of classroom instruction in real estate finance. * * *"