[Cite as *Breitenbach v. Double Z Constr. Co., L.L.C.*, 2016-Ohio-1272.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| TIFFANY N. BREITENBACH, et al. | : | Hon. William B. Hoffman, P. J. |
| | : | Hon. John W. Wise, J. |
| Plaintiffs-Appellants | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 15 CA 53 |
| DOUBLE Z CONSTRUCTION CO., LLC. | : | |
| | : | |
| | : | O P I N I O N |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas, Case No. 2014-CV-00701

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 24, 2016

APPEARANCES:

For Plaintiffs-Appellants

RAYMOND J. SCHMIDLIN, JR.
TIMOTHY L. MCGARRY
HENDERSON, SCHMIDLIN & MCGARRY
840 Brainard Road
Highland Heights, Ohio 44143

For Defendant-Appellee

STEVEN CARLINO
DAVID T. PATTERSON
WESTON HURD
10 West Broad Street, Suite 2400
Columbus, Ohio 43215-3469

*Wise, J.*

{¶1} Plaintiffs-Appellants, Tiffany Breitenbach, Administratrix of the Estate of Micah Montgomery, Deceased, Abbigail Montgomery, a minor, and Reid Montgomery, a minor, appeal the June 29, 2015, decision of the Licking County Court of Common Pleas granting summary judgment in favor of Appellee Double Z Construction Co., LLC.

## STATEMENT OF THE CASE AND FACTS

{¶2} This appeal arises from a workplace intentional tort claim filed in 2014 by Plaintiffs-Appellants, Tiffany Breitenbach, Administratrix of the Estate of Micah Montgomery, Deceased, Abbigail Montgomery, a minor, and Reid Montgomery, a minor, after Micah Montgomery ("Montgomery") sustained fatal injuries on April 12, 2013, while working as a construction worker for Defendant-Appellee Double Z Construction Co., LLC ("Double Z"). Montgomery was fatally injured when a steel beam struck the construction boom lift in which he was an occupant, causing him to be ejected and fall to the ground.

{¶3} The relevant facts are as follows:

{¶4} Micah Montgomery worked for Double Z Construction Co., LLC. in its bridge construction operations. On the day Montgomery was killed, he was working as a laborer on a project which involved demolition work of a vehicle traffic bridge on Interstate 70 eastbound in Licking County near Newark, Ohio. (Chandler depo. at 20; Osborne depo. at 17).

{¶5} The other employees who were working at the job site at the time of the incident are as follows: Gary C. Stanley ("Stanley"), Superintendent; Jason Chandler,

Foreman; Bruce Osborne, ground man; Dwayne Cutler, laborer; Randall Ralston, operator; Jeremy Warner, operator; Joe Tackett, laborer; Mike Neil, crane operator.

{¶6} The first step in this process was removing the concrete decking and parapets from the steel frame of the bridges. (Deposition of Dwayne Cutler ("Cutler depo.") at 15; Guzzo depo. at 10-11). Once the concrete is removed, the process of removing the exposed steel beams is begun. (Chandler depo. at. 17). An aerial lift is used to hoist personnel to perform cutting and rigging of the concrete. (Guzzo depo. at 12).

{¶7} Montgomery was operating an aerial lift and working directly with Michael Neal ("Neal"), the crane operator, during the preparation to remove a 60-foot I-beam used in part to support the overpass/bridge. (Chandler depo. at 17, 26; Cutler depo. at 13, 23; Neal depo at 17, 19; Record 24, Osborne depo. at 21, 28). During the removal of the concrete, Osborne was in the aerial lift with Montgomery. However, prior to the steel beams being removed, Osborne left the lift, and Montgomery was alone in the lift. (Guzzo Dep. at 12).

{¶8} This was the first I-beam removed on this job site. (Chandler depo. at 17; Ralston depo. at 12). Montgomery used an oxygen/acetylene torch in order to cut through the I-beam, and to burn two holes in order to rig the beam to be moved to the ground by the crane. (Cutler depo. at 23; M. Guzzo depo. at 12; Osborne depo. at 21; Tackett depo. at 15; Ralston depo. at 10). The holes for the rigging should have been spaced an identical distance from the center of the beam. (Osborne depo. at 24; Tackett at 19). For unknown reasons, Montgomery improperly spaced the holes approximately six (6) feet from the center on one side and eighteen (18) feet from center on the other

side. (Chandler depo. at 26; Cutler depo. at 33;  M. Guzzo depo. at 21; Osborne depo. at 24, 34; Ralston depo. at 19).

**{¶9}**  Montgomery then secured the I-beam to two 16-foot long wire rope slings. The rope slings were then connected to the crane's main hook, which was equipped with a spring-loaded, self-closing metal latch. (See Affidavit and Report of Matthew R. Gardiner, P.E., attached to Defendant-Appellee's Motion for Summary Judgment).

**{¶10}** After completing the rigging and connections between the crane and the beam, Montgomery retracted the telescoping aerial lift in order for Neal to begin lowering the beam to the ground. Sometime after the pick began, Montgomery swung his man-lift bucket back toward the beam. (Chandler depo. at 17, 22; M. Guzzo depo. at 12; Neal depo. at 33).

**{¶11}** During the crane's operation, with the 60-foot I-beam, the sling cable on the side where Montgomery was positioned in the aerial lift, slid out of the crane's hook, causing one side of the steel I-beam to fall and come in contact with the aerial lift where Montgomery was located. (Neal depo. at 31; Osborne depo. at 24; Tackett depo. at 17, 35; Ralston depo. at 15; Warner depo. at 14, 19). This caused the basket to almost completely break away from the aerial lift's boom. (Cutler depo. at 20; Ralston depo. at 23). The aerial lift crashed to the ground below along with Montgomery, resulting in crushing injuries to Montgomery's back and neck and near instantaneous death. (Cutler depo. at 21).

**{¶12}** On February 20, 2014, Tiffany Breitenbach, as Administratrix of the Estate of Micah Montgomery, Deceased, filed a Complaint alleging workplace intentional tort in the Pike County Court of Common Pleas.  Abbigail Montgomery and Reid Montgomery,

the minor children of Micah Montgomery, were also named as Plaintiffs in the Complaint. The case was ultimately transferred to Licking County Common Pleas Court.

{¶13} The Complaint alleged an employer intentional tort claim against Double Z Construction, Co., LLC. Appellant alleged in its Complaint that Double Z required Montgomery to perform work: 1) in the absence of required safety guards and safety devices; and 2) while intentionally and deliberately exposed to hazardous and dangerous processes, procedures, instrumentalities and conditions of which Double Z had knowledge. (Complaint at ¶14).

{¶14} Double Z's insurers, Valley Forge Insurance Co. and Continental Casualty Insurance Co., sought and obtained leave to intervene.

{¶15} On January 30, 2015, Appellee Double Z filed a Motion for Summary Judgment.

{¶16} On April 14, 2015, Appellants filed a Brief in Opposition to Appellee's Motion for Summary Judgment.

{¶17} On April 24, 2015, Appellee filed its Reply in Support of Motion for Summary Judgment.

{¶18} On May 8, 2015, Appellants filed their Sur Reply.

{¶19} By Judgment Entry dated June 29, 2015, the trial court granted Appellee's Motion for Summary Judgment, finding "no evidence … that defendant deliberately intended to injure Montgomery or any other employee."

{¶20} Appellants now appeal, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶21}** "I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANT DOUBLE Z CONSTRUCTION CO., LLC WHEN PLAINTIFFS WERE ENTITLED TO A PRESUMPTION THAT DOUBLE Z ACTED WITH THE DELIBERATE INTENT TO INJURE THE DECEASED WHEN DOUBLE Z FAILED TO MAKE AN EQUIPMENT SAFETY GUARD AVAILABLE FOR USE. OHIO REV. CODE §2745.01(C).

**{¶22}** II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DOUBLE Z WHEN MATERIAL ISSUES OF FACT REMAINED REGARDING WHETHER DOUBLE Z ACTED WITH DELIBERATE INTENT TO INJURE THE DECEASED BY KNOWINGLY PERFORMING AN UNSAFE LIFT OF A STEEL BEAM WHILE KNOWING THAT THE DECEASED WAS IN THE FALL ZONE OF THAT BEAM. OHIO REV. CODE §2745.01(A)."

### ***Summary Judgment Standard of Review***

**{¶23}** We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or

stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶24}** The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

**{¶25}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## I., II.

**{¶26}** In both of their Assignments of Error, Appellants argue that the trial court erred in granting summary judgment in this matter.  We disagree.

**{¶27}** An intentional tort involves an act committed with the specific intent to injure or with the belief that injury is substantially certain to occur. *Jones v. VIP Dev. Co.,* 15 Ohio St.3d 90, 95, 472 N.E.2d 1046 (1984), citing 1 Restatement of the Law 2d, Torts, Section 8A (1965). When the employer proceeds despite knowledge that injuries

are certain or substantially certain to result, "he is treated by the law as if he had in fact desired to produce the result." *Fyffe v. Jeno's, Inc.,* 59 Ohio St.3d 115, 118, 570 N.E.2d 1108 (1991). Under *Fyffe,* an employee could establish intent based on substantial certainty by demonstrating the following:

**{¶28}** (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. *Id.*

**{¶29}** R.C. §2745.01, which now governs employer intentional torts in Ohio, took effect on April 7, 2005, and provides as follows:

(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶30} As defined by R.C. §2745.01(B), "substantially certain" means that an "employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." Acting with the belief that an injury is "substantially certain" to occur is not analogous to wanton misconduct, nor is it "enough to show that the employer was merely negligent, or even reckless." *Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St.3d 496, 2008–Ohio–937, 885 N.E.2d 204, ¶17; *Weimerskirch v. Coakley,* 10th Dist. Franklin No. 07AP–952, 2008–Ohio–1681.

{¶31} Rather, as noted by the Ohio Supreme Court, one may recover "for employer intentional torts only when an employer acts with specific intent to cause an injury." *Kaminski v. Metal Wire Prods. Co.,* 125 Ohio St.3d 250, 2010–Ohio–1027, 927 N.E.2d 1066, ¶56; *Houdek v. ThyssenKrupp Materials N.A., Inc.,* 134 Ohio St.3d 491, 2012–Ohio–5685, 983 N.E.2d 1253, ¶25 (finding "absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system").

{¶32} As noted by the court in *Kaminski v. Metal & Wire Products,* 175 Ohio App.3d 227, 2008–Ohio–1521, 886 N.E.2d 262, "R.C. 2745.01 codifies the common-law employer intentional tort and makes its remedy an employee's sole recourse for an employer intentional tort." *Id.* at paragraph 14.

**{¶33}** As further explained by the Ohio Supreme Court in *Hoyle v. DTJ Ents., Inc.,* 143 Ohio St.3d 197, 2015–Ohio–843:

> R.C. 2745.01(A) incorporates the definition of an employer intentional tort from *Jones,* 15 Ohio St.3d at 95, 472 N.E.2d 1046, and requires a plaintiff to prove either deliberate intent to injure or a belief that injury was substantially certain. But R.C. 2745.01(B) equates "substantially certain" with "deliberate intent" to injure. Thus, the " 'two options of proof [under R.C. 2745.01(A) ] become: (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure.' " *Kaminski* at ¶ 55, quoting *Kaminski v. Metal & Wire Prods. Co.,* 175 Ohio App.3d 227, 2008–Ohio–1521, 886 N.E.2d 262, ¶ 31 (7th Dist.). "[W]hat appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same." *Rudisill v. Ford Motor Co.,* 709 F.3d 595, 602–603 (6th Cir. 2013) (describing R.C. 2745.01 as "a statute at war with itself").
>
> The General Assembly's intent in enacting R.C. 2745.01 was to "significantly restrict" recovery for employer intentional torts to situations in which the employer "acts with specific intent to cause an injury." *Kaminski* at ¶ 57; *Stetter v. R.J. Corman Derailment Servs., L.L.C.,* 125 Ohio St.3d 280, 2010–Ohio–1029, 927 N.E.2d 1092, ¶ 26, citing *Kaminski* at ¶ 56. "[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek v.*

*ThyssenKrupp Materials N.A., Inc.,* 134 Ohio St.3d 491, 2012–Ohio–5685,

983 N.E.2d 1253, ¶ 2.

**{¶34}** The Supreme Court further found in *Houdek, supra,* that, in the absence

of deliberate removal (of a safety guard), a plaintiff must establish that the employer

acted with specific intent to injure him. In *Houdek,* the Court rejected the argument that

the intent inquiry was an objective one satisfied by an employer's mere knowledge of a

hazardous condition, as such would be covered by workers' compensation. *See Broyles*

*v. Kasper Machine Co.,* 6th Cir. No. 12–3464, 2013 WL 827713 (March 7, 2013). Even

if an employer places an employee in a potentially dangerous situation, there must also

be evidence that either management or the supervisor deliberately intended to injure the

employee for R.C. 2745.01(C) to apply. *Houdek,* 134 Ohio St.3d 491, 2012–Ohio–5685,

983 N.E.2d 1253.

**{¶35}** Simply stated, R.C. §2745.01 requires specific or deliberate intent to

cause injury in order to recover on an employer intentional tort claim. R.C. §2745.01(C)

establishes a rebuttable presumption that the employer intended to injure the worker if

the employer deliberately removes a safety guard. *Houdek,* 134 Ohio St.3d 491, 2012–

Ohio–5685, 983 N.E.2d 1253, ¶12.

**{¶36}** In the instant case, Appellants argue that a rigging device known as a

clevis is an "equipment safety guard" and that such clevis was "deliberately removed",

creating a rebuttable presumption under R.C. §2745.01(C) that Double Z acted with

deliberate intent to injure Montgomery.

*Equipment Safety Guard*

**{¶37}** The General Assembly has not provided a definition of "equipment safety guard" or "deliberate removal" for purposes of R.C. §2745.01(C).

**{¶38}** In *Fickle v. Conversion Technologies Int'l.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, the court addressed the issue of what constitutes an equipment safety guard, wherein it stated:

**{¶39}** "The General Assembly has not manifested any intent to give "equipment safety guard" or its component terms a technical meaning. There is nothing in the statute or the case law that suggests the General Assembly intended to incorporate any of the various equipment-specific or industry-specific definitions of guard appearing throughout the administrative or OSHA regulations, or for any agency or regulatory measure to be considered a definitional source."

**{¶40}** The *Fickle* court then went on to construe the undefined statutory terms according to their generally accepted meaning:

**{¶41}** "Guard" is defined as "a protective or safety device; *specif:* a device for protecting a machine part or the operator of a machine." Merriam–Webster's Collegiate Dictionary, supra, at 516. "Safety" means "the condition of being safe from undergoing or causing hurt, injury, or loss." *Id.* at 1027, 365 N.E.2d 1274. And "equipment" is defined as "the implements used in an operation or activity: APPARATUS." *Id.* at 392, 365 N.E.2d 1274. In turn, "device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *Id.* at 316, 365 N.E.2d 1274. "Protect" means "to cover or shield from exposure, injury, or destruction: GUARD." *Id.* at

935, 365 N.E.2d 1274. "Safe" is defined as "free from harm or risk" and "secure from threat of danger, harm, or loss." *Id.* at 1027, 365 N.E.2d 1274. *Fickle at* ¶ 38.

**{¶42}** Based on the foregoing definitions, the court arrived at the following definition of "equipment safety guard":

**{¶43}** "… as used in R.C. 2745.01(C), an "equipment safety guard" would be commonly understood to mean a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment."

**{¶44}** This definition was later adopted by the Ohio Supreme Court in *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, after its analysis and review of the phrase "deliberate removal by an employer of an equipment safety guard".

**{¶45}** In the case before us, we find that the clevis shackle is not an equipment safety guard as argued by Appellants. A clevis shackle is a piece of rigging equipment which is separate and apart from the crane hook or slings. When a clevis shackle is used, the cable slings are seated in the shackle and the shackle is seated in the crane hook, rather than the slings being directly seated in the hook. (*See* Vermillion Affidavit). It is used when the included angle on the sling is greater than 90 degrees. While a clevis shackle's purpose is to make rigging under certain conditions safer, such purpose does not make the device a safety equipment guard, only arguably a safety-related device.

**{¶46}** As stated by the trial court, it is unclear which dangerous aspect of which piece of equipment is being argued by Appellant: the slings, the crane, or both.

**{¶47}** Under R.C. §2745.01(C), we find that a clevis shackle is not "designed to shield an operator (crane operator) from exposure to or injury by a dangerous aspect of the equipment (crane)."[1]

**{¶48}** "The General Assembly did not make the presumption applicable upon the deliberate removal of any safety-related device, but only of an equipment safety guard, and we may not add words to an unambiguous statute under the guise of interpretation. *Davis v. Davis*, 115 Ohio St.3d 180, 873 N.E.2d 1305, 2007–Ohio–5049, ¶ 15, 20; *State v. Lowe*, 112 Ohio St.3d 507, 861 N.E.2d 512, 2007–Ohio–606, ¶ 15; *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351." *Fickle, supra.*

<u>Deliberate Removal</u>

**{¶49}** The *Fickle* court also held that " 'deliberate removal' for purposes of R.C. §2745.01(C) means "a considered decision to take away or off, disable, bypass, or eliminate, or to render inoperable or unavailable for use." The court, in a footnote, went on to explain:

**{¶50}** "It is important to note that R.C. 2745.01(C) does not require proof that the employer removed an equipment safety guard with the intent to injure in order for the presumption to arise. The whole point of division (C) is to presume the injurious intent required under divisions (A) and (B). It would be quite anomalous to interpret R.C. 2745.01(C) as requiring proof that the employer acted with the intent to injure in order to

---

[1] In *Pixley v. Pro-Pak Industries, Inc.*, 142 Ohio St.3d 203, 208, 2014-Ohio-5460, because the plaintiff in that case could not establish the existence of an intentional tort, the Ohio Supreme Court chose not to address the issue of whether the definition of an equipment safety guard is limited to devices shielding only operators from exposure to injury by a dangerous aspect of the equipment or whether it encompasses all employees injured by its deliberate removal.

create a presumption that the employer acted with the intent to injure. Such an interpretation would render division (C) a nullity."

**{¶51}** Appellant argues that national engineering standards require the use of a clevis shackle when the angle of the sling legs is greater than 90 degrees. Here, the angle ended up being approximately 103 degrees. Appellants therefore argue that failure to provide a clevis shackle amounted to deliberate removal.

**{¶52}** Even assuming arguendo that a clevis shackle was an equipment safety guard, in the case *sub judice* there is no evidence that Double Z deliberately removed the clevis or made it unavailable. Evidence was presented that a clevis shackle was available at Double Z's office which was approximately 45 minutes away. While it may have delayed the job, such delay does not constitute unavailability as contemplated under an intentional tort analysis.

**{¶53}** Further, Montgomery himself cut/burned the holes and performed the rigging on the I-beam at issue in this case. Prior to the holes being improperly spaced by Montgomery, there was no reason to anticipate that the angles of the sling legs in this case would exceed 90 degrees. Montgomery made the decision to attach the cable slings directly to the crane hook after unevenly spacing the holes for the cable slings. There is no evidence that the decision to proceed without a clevis shackle was the result of careful and thorough consideration or a deliberate decision.

**{¶54}** Based on the facts in this case, we do not find that the clevis was an equipment safety guard and further find that the clevis was not deliberately removed pursuant to R.C. 2745.01(C).

*Deliberate Intent*

**{¶55}** Appellants further contend that the evidence is sufficient to withstand summary judgment under R.C. §2745.01(A) even without the presumption provided in division (C).

**{¶56}** Appellants argue that Double Z acted with deliberate intent to injure Montgomery. In support, Appellants argue (1) both foremen at the job site were aware that Montgomery had improperly rigged the I-beam, causing the load to be uneven; (2) one of the foremen was aware that Montgomery's ariel lift was stuck in the mud, out of the view of the crane operator, in the fall zone when they began to move/lower the beam; (3) Double Z failed to provide the required clevis shackle; and (4) OSHA citations were issued finding that Montgomery was not a qualified rigger, an unused cable sling line was left in the crane hook, and Appellee failed to stop operations when the dangers in this case became apparent.

**{¶57}** We have already determined that the evidence is insufficient to establish that Double Z deliberately removed an equipment safety guard for purposes of the presumption under division (C). In light of that determination, we must conclude that such is also insufficient to establish that Double Z acted with deliberate intent to injure under divisions (A) and (B). We also find that a failure to provide adequate training is not sufficient to establish deliberate intent to injure. These kinds of failures did not suffice to establish an employer intentional tort even under the common-law standard of "substantial certainty." *See, e.g., Davis v. AK Steel*, 12th Dist. No. CA2005–07–183, 2006–Ohio–596, ¶12; *McCarthy v. Sterling Chems., Inc.,* 193 Ohio App.3d 164, 2011-Ohio-887. While the conduct of Double Z in moving/removing the improperly rigged I-

beam may be reckless, there is no evidence that Double Z acted with deliberate intent to injure Montgomery. Here, Montgomery's death was the result of a tragic accident, and at most, the evidence shows that this accident may have been avoided had certain precautions been taken. However, this evidence does not show that Appellee deliberately intended to injure Montgomery as set forth in R.C. §2745.01.

*OSHA Regulations*

{¶58} Appellants also argue that Appellee Double Z Construction was substantially certain that injury would occur because it was subsequently cited with violating OSHA safety regulation.

{¶59} As noted by this Court in *Reising v. Broshco Fabricated Prods.,* Richland App. No. 2005CA0132, 2006-Ohio-4449 at paragraph 61: " 'OSHA citations, standing alone, do not demonstrate an intent to injure.' *Fleck v. Snyder Brick and Block* (Mar. 16, 2001), Montgomery App. No. 18368; *see, also, Vermett v. Fred Christen and Sons Co.* (2000), 138 Ohio App.3d 586, 603, 741 N.E.2d 954 (refusing to consider an OSHA violation issued after an accident in determining substantial certainty and stating that OSHA does not affect an employer's duty to an employee); *Cross v. Hydracrete Pumping Co.* (1999), 133 Ohio App.3d 501, 507 n. 1, 728 N.E.2d 1104 (stating that the employee's 'attempt to impute actual knowledge through an OSHA violation is misplaced. An OSHA violation might present evidence of negligence'); *Neil v. Shook* (Jan. 16, 1998), Montgomery App. No. 16422 ('We conclude that the prior OSHA violations do not manifest the substantial certainty of harm required, but are only one of many factors to be considered). An employer's failure to follow proper safety procedures might be classified as grossly negligent or wanton, but does not constitute an intentional

tort. *Neil, supra citing Young v. Miller Bros. Excavating, Inc.* (July 26, 1989), Montgomery App. Nos. 11306 and 11307." (*See also Harris v. Benjamin Steel Co.*, 5th Dist. Richland No. 14 CA 96, 2015-Ohio-1499, ¶¶ 41-43).

{¶60} Appellant's Assignments of Error are denied.

{¶61} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed.

By Wise, J.,

Baldwin, J., concurs

Hoffman, P. J., concurs in part and dissents in part.

_____
HON. JOHN W. WISE

_____
HON. WILLIAM B. HOFFMAN

_____
HON. CRAIG R. BALDWIN

JWW/ 0302

*Hoffman, P.J., concurring in part and dissenting in part*

{¶62} I concur in the majority's analysis and decision the clevis shackle is not an equipment safety guard, and thereby, overrule Appellant's first assignment of error. I further concur in the majority's decision to overrule Appellant's second assignment of error.

{¶63} Having determined in the first assignment of error the clevis shackle was not an equipment safety guard, any discussion of "deliberate removal" is unnecessary to our disposition of this appeal. Nevertheless, I disagree with the majority's conclusion a "45 minute delay" occasioned by the need to retrieve an available equipment safety guard is insufficient to find the employer made it unavailable for use.

{¶64} Furthermore, I find any discussion regarding Montgomery's actions in improperly rigging the I-beam irrelevant to our analysis of Appellant's intentional tort claims. Ohio law bars the application of assumption of risk or contributory negligence as a defense to an intentional tort claim. *Cremeans v. Willmar Henderson Mfg. Co., a Div. of Waycrosse, Inc.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203.