[Cite as *Turner v. Dimex, L.L.C.*, 2019-Ohio-4251.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| TIM A. TURNER, | : | |
| | : | Case No. 19CA3 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| DIMEX, LLC, | : | |
| | : | |
| Defendant-Appellee. | : | |

<u>APPEARANCES</u>:

James R. Leach, Parkersburg, West Virginia, for Appellant.

Cari Fusco Evans, Fischer, Evans & Robbins, Ltd., Canton, Ohio, for Appellee.

Smith, P.J.

{¶1} Tim Turner appeals the February 11, 2019 judgment entry of the Washington County Court of Common Pleas which granted judgment to his employer, Dimex, LLC, on his claim for intentional tort. Turner asserts the trial court erred in granting judgment to Dimex, LLC. Having reviewed the record, we agree with the trial court's conclusions that: (1) the forklift backup alarm at issue is not an "equipment safety guard"; and, (2) there is no evidence that Dimex deliberately removed the backup alarm. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

## FACTS

{¶2} Dimex "Appellee" is a manufacturing facility in Marietta, Ohio. Tim Turner "Appellant" was employed by Appellee as a shipping clerk. On December 14, 2015 while at work, Appellant incurred serious injuries requiring multiple surgeries to his right leg when he was crushed between two forklifts on the plant's loading dock.

{¶3} On November 27, 2017, Appellant filed a complaint against Appellee alleging permanent personal injuries and associated losses and damages as a result of Appellee's deliberate removal of an equipment safety guard on one of its forklifts. Appellee filed a timely answer, alleging that it was entitled to Workers Compensation immunity pursuant to R.C. 2745.01. Appellee also alleged Appellant's injuries were caused by his own negligence and failure to follow procedures. As the trial court proceedings unfolded, the parties engaged in written discovery and depositions.

{¶4} On December 17, 2018, both Appellant and Appellee filed motions for summary judgment. The parties also filed responsive pleadings. On February 11, 2019, the trial court filed a Judgment Entry Regarding Motions for Summary Judgment which granted Appellee's motion and denied Appellant's motion.

{¶5} This timely appeal followed. Where pertinent, additional facts are set forth below.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE DIMEX, LLC AND DENYING SUMMARY JUDGMENT TO APPELLANT TIM TURNER."

STANDARD OF REVIEW

{¶6} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville,* 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19; *Citibank v. Hine,* 4th Dist. Ross No. 17CA3624, 2019-Ohio- 464, at ¶ 27. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and, (3) the moving party is entitled to judgment as a matter of law. *Capital One Bank (USA) N.A. v. Rose,* 4th Dist. Ross No. 18CA3628, 2018-Ohio-2209, at ¶ 23; Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler,* 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap,* 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, at ¶ 26.

{¶7} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662

N.E.2d 264 (1996); *Chase Home Finance* at ¶ 27; *Citibank, supra,* at ¶ 28. Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264. *See also Rose, supra,* at ¶ 24.

{¶8} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Ball v. MPW Indus. Servs., Inc.,* 2016-Ohio-5744, 60 N.E. 3d 1279, (5th Dist.) at ¶ 29, citing, *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

LEGAL ANALYSIS

{¶9} Prior to April 7, 2005, the courts looked to common law to determine whether an employee established his or her employer committed an intentional tort. Pursuant to *Fyffe v. Jeno's, Inc.,* 59 Ohio St.3d 115, 118, 570 N.E.2d 1108 (1991), when an employer proceeds despite knowledge that injuries are certain or substantially certain to result, "he is treated by the law as if he had in fact desired to produce the result." Under *Fyffe,* an employee could establish intent based on substantial certainty by establishing the following: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee

is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. *See Breitenbach v. Double Z Constr. Co.,* 2016-Ohio-1272, 63 N.E.3d 498, ¶ 28 citing *Fyffe; Ball, supra,* at ¶ 30.

{¶10} R.C. 2745.01, effective April 7, 2005, provides in pertinent part:

(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation

was committed with intent to injure another if an injury or an

occupational disease or condition occurs as a direct result.

*Kaminski v. Metal &Wire Products Co.,* 125 Ohio St.3d 250, 2010-Ohio-

1027, 927 N.E.2d 1066, at ¶¶ 48-50.

{¶11}   In *Hoyle v. DTJ Ents., Inc.,* 143 Ohio St.3d 197, 2015-Ohio-843, 36

N.E.3d 122, at ¶ 11, the Supreme Court of Ohio observed:

The General Assembly's intent in enacting R.C. 2745.01 was to

'significantly restrict' recovery for employer intentional torts to

situations in which the employer 'acts with specific intent to cause an

injury.' *Kaminski, supra,* at ¶ 56; *Stetter v. R.J. Corman Derailment*

*Servs., L.L.C.,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d

1092, at ¶ 26.   '[A]bsent a deliberate intent to injure another, an

employer is not liable for a claim alleging an employer intentional

tort, and the injured employee's exclusive remedy is within the

workers' compensation system.' *Houdek v. ThyssenKrupp Materials*

*N.A., Inc., 134* Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253,

¶ 25.[1]

1.   Definition of "equipment safety guard."

---

[1] The *Kaminski* court considered the constitutionality of R.C. 2745.01 and determined it to be constitutional. *Id.* at ¶ 102.

{¶**12**} Appellant argues that he is entitled to the presumption of intent to injure pursuant to R.C. 2745.01(C) because Appellee made a deliberate decision to leave a forklift in service when it knew that the backup alarm was inoperable and failed to repair or replace it.  The trial court herein found that the forklift backup alarm is not an "equipment safety guard since it does not shield the operator from exposure or injury."  The court also found that Appellant is not entitled to the presumption of intent to injure since he was not the "operator" of the forklift.

{¶**13**} Our research has led us to various cases which have considered the issue of the meaning of "equipment safety guard" within the context of R.C. 2745.01(C).  In *Hewitt v. L.E. Myers Co.,* 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, the Supreme Court of Ohio found that free-standing items that serve as physical barriers between the employee and potential exposure to injury, such as rubber gloves and sleeves, do not constitute "equipment safety guards." *Id.* at ¶ 30.  In *Beyer v. Rieter Automotive North American,* 134 Ohio St.3d 379, 2012-Ohio-5627, 982 N.E.2d 708, relying upon the *Hewitt* decision, the Supreme Court reversed the decision of the Eighth District Court of Appeals that found that face masks were equipment safety guards, and consequently entered judgment in favor of the employer.  In *Houdek, supra,* at ¶ 27, the Supreme Court determined that safety devices such as orange cones, reflective vests, and retractable gates are not equipment safety guards.  The Supreme Court has also declined to accept cases in

which appeals courts determined that the following were not equipment safety guards: a trench box designed to protect workers from a trench collapse; a jib crane and an observation platform (part of a system of safety devices implemented on a tire shredder); and a tire bead and bead taper, parts of a wheel assembly unit. *See Barton v. G.E. Baker Construction,* 9th Dist. Lorain No. 10CA009929, 2011-Ohio-5704; *Downard v. Rumpke of Ohio, Inc.,* 12th Dist., 2013-Ohio-4760, 3 N.E.3d 1270; *Roberts v. RMB Ents., Inc.,*197 Ohio App.3d 435, 2011-Ohio-6223, 967 N.E.2d 1263. (12th Dist.). More recently, the Fifth District Court of Appeals found that a clevis shackle, separate from a crane and for the purpose of making rigging equipment more safe, is not an equipment safety guard. *See Breitenbach, supra.*

{¶14} The Fifth District Court of Appeals also considered a fact pattern and arguments similar to Appellant's in *Beary v. Larry Murphy Dump Truck Serv., Inc.,* 2014-Ohio-4333, 20 N.E.3d 359. There the employee brought an intentional tort action against a trucking company after the employee was struck by a skid steer on a parking lot. The trucking company was hired to pave a grocery store parking lot. On the date of the accident, Beary was attaching caution tape on the parking lot. Beary was struck by another employee who was operating a skid steer that was equipped with a backup alarm that was not functional at the time. The

operator of the skid steer did not know Beary was behind him.  Beary did not know the skid steer was headed in his direction. [2]

{¶15}The *Beary* court looked to the Supreme Court's decision in *Hewitt v. L.E. Myers Co., supra,* wherein the Court was asked to determine whether "equipment safety guard" for purposes of R.C. 2745.01(C) includes only those devices on a machine that shield an employee from injury by guarding the point of operation of that machine.  *Id*.  The Supreme Court explicitly held that, as used in R.C. 2745.01(C), "equipment safety guard" means "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment."  *Id*.  The Court rejected a broader interpretation that would include any *generic safety-related items* (emphasis added), as such a broad interpretation "ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts."  *Id*.

{¶16} The *Hewitt* Court had previously adopted the rationale found in *Fickle v. Conversion Technologies, Int'l Inc.,* 6th Dist. Williams No. WM–10–016, 2011-Ohio-2960.  In *Fickle*, the trial court found that a jog control switch and an

---

[2] Appellant originally brought suit against his employer "LMDT" for an intentional tort pursuant to R.C. 2745.01. LMDT moved for summary judgment which the trial court granted on February 17, 2011. Appellant appealed the trial court's decision. In *Beary v. Larry Murphy Dump Truck, Serv. Inc.,* 5th Dist. Stark No. 2011–CA–00048, 2011-Ohio-4977, the appellate court affirmed the trial court's ruling. The appellate court found the reasoning in *Fickle v. Conversion Technologies, Int'l Inc*., 6th Dist. Williams No. WM–10–016, 2011-Ohio-2960, to be persuasive and held that the backup alarm is not equipment safety guard pursuant to R.C. 2745.01(C).  Appellant appealed the appellate ruling to the Ohio Supreme Court. The Ohio Supreme Court held this case in abeyance pending its decision in *Hewitt v. L.E. Myers Co.,* 8th Dist. Cuyahoga No. 96138, 2011-Ohio-5413.  After the Ohio Supreme Court decided the *Hewitt* case, the Court reversed and remanded this case to the trial court to apply the *Hewitt* decision.  *Beary v. Larry Murphy Dump Truck Serv., Inc.,* 134 Ohio St.3d 359, 2012-Ohio-5626, 982 N.E.2d 691.

emergency stop cable were not equipment safety guards. The court reasoned that "the jog switch does not shield from accidental contact," and "the cable does not guard or prevent" the "catching or entangling" of an operator's hand.

{¶17} On appeal, the *Fickle* court observed that, "[i]n the absence of clear legislative intent to the contrary, words and phrases in a statute shall be read in context and construed according to their plain, ordinary meaning." *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 137, 522 N.E.2d 477 (1988). The plain, ordinary, or generally accepted meaning of an undefined statutory term is invariably ascertained by resort to common dictionary definitions. *See, e.g.*, *Davis v. Davis, 115* Ohio St.3d 180, 873 N.E.2d 1305, 2007–Ohio–5049, ¶ 17–18: (internal citations omitted.). Similarly, this court has recognized that " ' "[i]t is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation." ' " *Wray v. Gahm Properties, Ltd.,* 2018-Ohio-50, 103 N.E.3d 1482, (4th Dist.), at ¶ 10, quoting, *Wilson v. Lawrence, 150* Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11.

{¶18} The *Fickle* court then went on to construe the undefined statutory terms according to their generally accepted meaning:

 "Guard" is defined as "a protective or safety device; *specif*: a device for protecting a machine part or the operator of a machine." Merriam–Webster's

Collegiate Dictionary, supra, at 516.  "Safety" means "the condition of being safe from undergoing or causing hurt, injury, or loss."  *Id*. at 1027.  And "equipment" is defined as "the implements used in an operation or activity: APPARATUS."  *Id*. at 392.  In turn, "device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function."  *Id*. at 316.  "Protect" means "to cover or shield from exposure, injury, or destruction: GUARD."  *Id*. at 935.  "Safe" is defined as "free from harm or risk" and "secure from threat of danger, harm, or loss."  *Id*. at 1027. *Fickle* at ¶ 38.

{¶19} Based on the foregoing, the *Fickle* court arrived at the following definition of 'equipment safety guard':  "... as used in R.C. 2745.01(C), an 'equipment safety guard' would be commonly understood to mean a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment."  In *Beary,* applying the reasoning contained in *Fickle,* the appellate court found that the skid steer's backup alarm was not an equipment safety guard for purposes of R.C.  2945.01(C).  The court reasoned as follows at ¶ 17:

> The backup alarm does not shield the operator or bystander from
> exposure or injury by a dangerous aspect of the skid steer and serves
> only to alert or warn of the skid steer's approach.  An operator or
> bystander is not shielded from injury by the mere existence of the

backup alarm. While the backup alarm may alert a bystander before he enters the zone of danger, it does not keep the bystander away from this zone of danger and does nothing to stop the skid steer from operating when an individual gets close to the machine. As noted by the trial court, if a bystander were directly behind the skid steer while it was backing up, the alarm would merely keep beeping while the skid steer ran over the bystander. While the backup alarm may make the skid steer safer, it does not shield the operator or a bystander from exposure to or injury by a dangerous aspect of the skid steer. As noted by the court in *Fickle,* the standard which the Ohio Supreme Court adopted in *Hewitt,* an equipment safety guard is more than a device that alerts of a condition or makes a machine safer. 6th Dist. Williams No. WM–10–16, 2011-Ohio-2960, 2011 WL 2436750. Consequently, the *Beary* court concluded that the employee failed to establish a rebuttable presumption of employer intent by the showing of deliberate removal of an equipment safety guard, pursuant to R.C. 2745.01(C).

{¶20} Appellant also urges us to consider that 2745.01 does not limit the protection for intentional tort to only "operators". Appellant asserts that, in this regard, the *Hewitt* and *Houdek* decisions have created confusion.

Appellant points out that the *Hewitt* decision, based on its particular facts, limited the protection of an equipment safety guard to an operator, while in *Houdek,* the Court considered the claim of an employee, not operator, who was struck by a sideloader operated by another employee.  Ultimately, the *Houdek* decision turned on the issue of whether or not the employer's actions were deliberate.  Appellant asserts that the Supreme Court's failure to clarify whether the definition of "equipment safety guard" is limited to only operators of equipment has contributed to a split of opinion within the appellate districts.  Citing *Pixley v. Pro-Pak Industries, Inc.,* 142 Ohio St.3d 293, 2014-Ohio-5460, 28 N.E,2d 1249.  Appellant concludes that as an initial matter, we should find that Appellant, as a non-operator, should be afforded the protections of RC. 2745.01, and notwithstanding, Appellant as "operator" of Dimex's loading dock, should be afforded the protection of the statute.

{¶21} In *Pixley*, the Supreme Court reversed the appellate court's decision on the narrow finding that the Plaintiff could not establish a deliberate intent claim, failing to take the opportunity to address whether the definition of "equipment safety guard" is limited only to operators of equipment.  In the decision, Justice Pfeiffer dissented, writing that the "protections for workers contained in R.C. 2745.01(C) are in no way limited

to the operator of a piece of machinery." While we agree that these cases demonstrate the language of the statute in this regard remains unsettled, we find this issue to be moot in light of our finding in agreement with the trial court's decision.

{¶22} For the reasons which follow, we find, as did the trial court, that the reasoning set forth in *Beary* is persuasive and equally applicable to the facts presented in Appellant's case. We find that the forklift backup alarm is not an "equipment safety guard" since it does not shield the operator, or really any other person, from exposure or injury. *See Beary, supra,* at ¶ 17.

{¶23} In this case, Daren Bolen, the plant manager at Dimex, testified as to the layout of the shipping docks. The loading dock floor was a large area at Dimex containing six docks. There was an area of floor space and warehouse area. There was a shipping office about 30 feet away from the shipping dock. Large trucks pulled up to the docks to be loaded to the warehouse area.

{¶24} Bolen testified that Dimex employees loaded several trucks each day. He testified there should not be anybody on the loading docks where the forklifts are loading and unloading. He acknowledged Appellant's job required him to be on the shipping docks frequently. Plant

manager Bolen also testified Forklift 21, the equipment operated by Sam

Smith at the time of Appellant's injury, was purchased new in 2013.

{¶25} Appellant testified he was originally employed by Dimex in 2012.

Prior to working at Dimex, Appellant worked for another company, Ames.  At

Ames, Appellant began as a forklift operator and warehouse supervisor.  He

became certified in the operation of forklifts.

{¶26} At Dimex, Appellant began as a warehouse employee, operating

forklifts.  His training consisted of watching a video which instructed on the

operation of forklifts.  At the time of Appellant's injury in 2015, he worked as a

shipping clerk, checking paperwork and operating the forklifts only occasionally.

{¶27} Appellant testified on the accident date, he had assigned Sam

Smith to unload material from an Old Dominion truck.  Appellant and Smith

walked onto the dock where the truck was located.  Smith was operating an

open-rear forklift.  Smith was able to turn and look out the back of the open-

rear forklift, which did not have mirrors.  After a brief conversation,

Appellant went to his office for a few minutes.

{¶28} Appellant had left the office and was on his way to get a soda in

the breakroom when he remembered he had forgotten some items that would

be in Smith's way as he worked.  Appellant was aware that Smith was in the

Old Dominion truck on his forklift.  Appellant turned around and came back

across the dock to look for someone to move the items. John Hinton was coming out of the plant, so Appellant motioned Hinton to pull over and instructed Hinton to move the items.

{¶29} When Appellant stopped, he was between Smith's loading dock and the next one, but not directly at the back of the Old Dominion truck. Appellant's back was turned to Smith and he was facing Hinton. Suddenly, Hinton started yelling and screaming that Sam Smith was coming back towards him. Appellant testified that he heard neither a horn nor a backup alarm. Unfortunately, when Smith backed out of the truck with his forklift he pinned Appellant against Hinton's forklift. Appellant had only enough time to move out of the way except for his right leg.

{¶30} Sam Smith, a full-time forklift operator at the time of the accident, acknowledged the shipping floor could be "tight quarters" at times. There were no designated lanes for pedestrians or off-limits marks for forklifts designated on the shipping floor. He testified typically, if a person was loading or unloading, he or she is more focused on the load. Smith testified on the accident date, he was assigned to Forklift 21. Smith did a pre-shift inspection and reported that the backup alarm needed service. Sometimes the alarm functioned and sometimes it did not.

{¶31} Smith did not dispute that on the specific dates of December 1, 2, 3, 7, 8, 11, and 14, the pre-service checklist he prepared indicated that the backup alarm needed service. Smith testified it was not his job to perform service on the forklift. Smith denied discussing the pre-inspection report of his forklift with the safety coordinator, Melissa Jarvis. However, he did tell someone in maintenance about a safety issue with the backup alarm. Smith also made other employees aware. No one ever told him to take the forklift out of service.

{¶32} Smith testified prior to backing out of the truck, he looked over his right shoulder but not his left. He testified he did not use his horn because he did not see Appellant. Appellant was in Smith's blind spot. After the accident, Smith was sent for a drug test and then sent home. He returned to work for his next shift and resumed duties with Forklift 21. Smith checked the backup alarm and, on this date, it was functioning.

{¶33} John Hinton's testimony added little to the facts. Hinton testified he was also employed by Dimex as a forklift operator. He testified he did not recall the incident, but he does not dispute Appellant's testimony that he started yelling just before the incident.

{¶34} Bolen testified he participated in safety meetings and training, but was not involved in investigating the incident. Bolen agreed that the

records produced indicated that as far back as December 1, 2015, the forklift's backup alarm had been reported as needing service. Based on the records, he acknowledged that the forklift was not taken out of service for repair of the backup alarm. Bolen testified the operator determines whether there should be removal for service but the maintenance supervisor has the ultimate responsibility for making that determination.

{¶35} Bolen testified the backup alarm is listed as a safety device on the maintenance checklist. Bolen understood company policy to be that only certain things would remove a forklift from service, and a backup alarm was not one of them. After the accident, the company received an OSHA citation but it did not relate to the backup alarm. Rather, OSHA cited Dimex for not having pedestrian aisles and passageways in the shipping area appropriately marked.

{¶36} As stated above, we find the reasoning set forth in *Beary* equally applicable here. In this case, the backup alarm did not shield Smith or Appellant from exposure or injury by a dangerous aspect of the forklift and served only to alert or warn of the forklift's approach. While the backup alarm may have alerted Appellant while he was in the zone of danger, it would not have served to actually keep him away from the zone of danger nor stop the forklift from running simply because Appellant was nearby.

As noted by the *Beary* and *Fickle* courts, the standard which the Supreme Court of Ohio adopted in *Hewitt* is that an equipment safety guard is more than a device that alerts of a condition. Thus, we find the trial court did not err when it found that the forklift backup alarm is not an "equipment safety guard" since it did not shield the operator from exposure or injury.

2. Employer intent.

{¶37} The trial court herein also found there was no evidence that Dimex deliberately removed the backup alarm by not requiring the forklift to be taken out of service, based on Smith's notations on the daily pre-service checklist. There is a rebuttable presumption of employer intent upon a showing of the "deliberate removal * * * of an equipment safety guard * * * if an injury * * * occurs as a direct result." R.C. 2745.01(C). An intent argument was also raised in *Beary* and the court again looked to *Hewitt,* wherein the Supreme Court held that in order to receive the benefit of the rebuttable presumption that an employer acted with deliberate intent to cause the plaintiff's injury, a plaintiff must establish that the employer "makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard." *Hewitt v. L.E. Myers Co.,* 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795. In *Hewitt*, the Supreme Court stated that removal may encompass more than "physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard." *Id.*

{¶38} The *Beary* court also noted the Supreme Court's decision in *Houdek v. ThyssenKrupp Materials, N.A., Inc., supra,* that, in the absence of deliberate removal, a plaintiff must establish that the employer acted with specific intent to injure him. *See also Breitenbach, supra,* at ¶ 33. In *Houdek*, the Court rejected the argument that the intent inquiry was an objective one satisfied by an employer's mere knowledge of a hazardous condition, as such would be covered by workers' compensation. *See Broyles v. Kasper Machine Co.,* 6th Cir. No. 12–3464, 2013 WL 827713 (March 7, 2013). Even if an employer places an employee in a potentially dangerous situation, there must also be evidence that either management or the supervisor deliberately intended to injure the employee for R.C. 2745.01(C) to apply. *Houdek,* 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253. Simply stated, R.C. § 2745.01 requires specific or deliberate intent to cause injury in order to recover on an employer intentional tort claim. R.C. § 2745.01(C) establishes a rebuttable presumption that the employer intended to injure the worker if the employer deliberately removes a safety guard. *Houdek*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 12. *Breitenbach, supra,* at ¶ 35.

{¶39} In *Beary,* the trial court found that assuming the backup alarm was an equipment safety guard, there was no evidence of deliberate removal of the apparatus. The injured worker testified that because the foreman knew the backup

alarm was not functional, therefore Beary was placed at risk.  Beary asserted that

the evidence that the backup alarm was disconnected and did not work for three to

six months was enough to establish the rebuttable presumption of intent.  As

specifically stated in *Houde*k, the Ohio Supreme Court rejected the argument that

the intent inquiry was an objective one satisfied by an employer's mere knowledge

of a hazardous condition.  Accordingly, the appellate court found that evidence that

the alarm was disconnected and did not work was not enough to establish the

rebuttable presumption without evidence of deliberate intent.

{¶40} Furthermore, the appellate court found that even if they had found that

the backup alarm is an equipment safety guard, there was no evidence the

employer deliberately removed it.  Beary also testified that he didn't "think [the

foreman's] intentions were to deliberately intend to injure me per se."  And Beary

testified that he was not aware of any evidence that suggested before the day of the

accident the foreman planned for him to be injured.  The appellate court also

concluded that after reviewing the evidence, there was no indication that the

employer made a deliberate decision to "lift, push aside, take off, or otherwise

eliminate the backup alarm."

{¶41} In Appellant's case, the trial court found there was no evidence that

Dimex deliberately removed the backup alarm by not requiring the forklift to be

taken out of service when the operator noted that it was not working on routine

daily inspection reports.  Based on the above case law, which provides that the intent inquiry is not satisfied by an employer's mere knowledge of a hazardous condition, we find the undisputed evidence that the forklift's backup alarm had not been functioning several days prior to Appellant's injury and including the injury date, does not suffice to establish the rebuttable presumption without deliberate intent.

{¶42} Finally, similar to the reasoning we have applied from *Beary,* this record is simply devoid of any evidence that Dimex or its representatives intended to injure Appellant.  The trial court observed that there was no evidence "that Dimex made a deliberate decision to 'remove' the backup alarm by not requiring the forklift to be taken out of service when Smith noted that it was not working on the routine daily inspection report."  We have engaged in a de novo review of this record and find no evidence to the contrary.

{¶43} For the foregoing reasons, we find no merit to the arguments raised in Appellant's sole assignment of error.  Accordingly, we overrule the assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Jason Smith, Presiding Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**