[Cite as *Bliss v. Johns Manville Corp.*, 2021-Ohio-1673.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Robert Bliss, et al.                                    Court of Appeals No. L-20-1091

       Appellee                                    Trial Court No. CI0201704824

v.

Johns Manville, et al.                                  **DECISION AND JUDGMENT**

       Appellant                                    Decided:  May 14, 2021

* * * * *

Kevin J. Boissoneault and Jonathan M. Ashton, for appellee.

Mark S. Barnes, Gregory B. Denny and Elizabeth L. Bolduc,
for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, denying summary judgment and entering judgment for appellant following a jury trial.  For the following reasons, we reverse.

## II. Background and Procedure

{¶ 2} On November 17, 2015, appellee, John Bliss, sustained a degloving injury to his right hand while operating a machine known as a Base Fiber Feeder. This machine uses a conveyor system to separate fiberglass fibers, feed the fibers into two adjacent lift aprons, and form the fibers into insulation. The conveyor belt of the lift apron has one-inch metal spikes on the surface, which help raise the fibers to the top of the lift apron. The fibers then fall onto an incline conveyor before being transported to a pulper.

{¶ 3} The lift apron has a sensor to control the speed of the conveyor, and if the sensor is obstructed, the conveyor slows or completely stops, requiring manual cleaning of the sensor with a nylon brush. The design of the machine, with an access window, permits this manual cleaning. In rare instances, an employee cannot clean the sensor with the brush via the access window, and maintenance staff must service the machine. On the date of the injury, the sensor became obstructed and appellee opened the access window to clear the sensor while the machine was running, which resulted in his injury.

{¶ 4} Appellant, Johns Manville, maintains three lift aprons in the plant. In response to a similar incident in 2013, appellant added bolts to the access windows on the two lift aprons in use on the Base Fiber Feeder. A spare lift apron, not on the machine at the time, did not have bolts added to it. Sometime prior to the incident, appellant removed a lift apron and replaced it with the spare lift apron, without bolts. Therefore, on the date of the injury, there were no bolts to impede appellee from using the access window, which ultimately led to his degloving injury.

**{¶ 5}** On November 15, 2017, appellee filed suit in the Lucas County Court of Common Pleas, alleging appellant intentionally caused injury to appellee in violation of R.C. 2745.01. Appellant filed a motion for summary judgment on May 30, 2019, on the grounds that there was insufficient evidence to establish it acted with intent to injure another under R.C. 2745.01(A) and (B). In response, appellee filed a memorandum in opposition of summary judgment on July 18, 2019, alleging appellee was entitled to a rebuttable presumption of intent to injure under R.C. 2745.01(C), supported by the affidavit of his expert Gerald Rennell. On August 1, 2019, appellant filed a reply memorandum in support of summary judgement which argued that appellee failed to carry his burden of proof under R.C. 2745.01(C), and moved to strike the affidavit of Rennell.

**{¶ 6}** The affidavit stated, in relevant part:

6. Johns Manville knew the guard on the base fiber feeder was defective because it was not secured in position with bolts requiring hand tools to open the guard. Having an unsecured and defective guard is the same as removing a guard.

* * *

11. Johns Manville showed a total and complete disregard for the safety of its employees by failing to secure guards in place with bolts.

* * *

13.  It is my opinion that Johns Manville deliberately removed a safety guard when its personnel failed to bolt the guard in position (even though the guard had previously been bolted following an identical incident) and allowed the unguarded machine to be operated in violation of OSHA 1910.212(a)(2). In other words, another incident was inevitable. While it is impossible, at this juncture, to determine the state of mind of any Johns Manville supervisor or safety personnel, what is clear is that the decision to remove this equipment guard in this instance came as a result of deliberate, intentional, and volitional actions. These same people, with specific knowledge of an identical incident to one of its employees, took these actions and left Mr. Bliss to suffer the inevitable consequences.

{¶ 7} The trial court denied appellant's motion to strike Rennell's affidavit on August 29, 2019.  On September 30, 2019, the trial court also denied appellant's motion for summary judgment.  The trial court relied on the expert affidavit of Rennell, which opined that a guard was deliberately removed, to conclude that appellant failed to show that there was no genuine issues of material fact.  In its ruling, the trial court did not, however, conclude as a matter of law that the access window and/or modified lift apron was an equipment safety guard.

{¶ 8} The date for trial was ultimately set for November 18, 2019.  On November 1, 2019, appellant took the deposition of Rennell and subsequently filed a

4.

motion for leave to file summary judgment instanter. Appellee opposed the motion for leave. The trial court denied appellant's motion on November 14, 2019.

{¶ 9} Appellant next filed a motion in limine to exclude Rennell's testimony on November 11, 2019. Appellee opposed the motion and also filed a motion in limine to exclude testimony by appellant's expert, Salvatore Malguarnera. On November 15, 2019, in judgment entries without opinion or analysis, the trial court granted appellant's motion and appellee's motion, to the extent it sought to prevent expert testimony as to the ultimate issue for trial, but denied both motions to the extent that it sought to exclude Rennell's and Malguarnera's respective testimony in its entirety.

{¶ 10} Trial began on November 18, 2019. At the close of appellee's case, appellant moved for a directed verdict. Appellant argued that appellee failed to produce evidence sufficient to establish appellant deliberately removed an equipment safety guard, or in the alternative, that appellant intended to injure appellee. On November 20, 2019, the trial court denied appellant's motion for directed verdict.

{¶ 11} On November 22, the jury found in favor of appellee and awarded $451,000 in damages. The trial court entered judgment consistent with the jury's verdict on December 5, 2019. On December 23, 2019, the trial court filed an entry captioned: Opinion and Judgment Entry on Definition of "Equipment Safety Guard" and "Deliberate Removal" Under R.C. 2745.01.[1]

---

[1] At the time the trial court issued its opinion, there was no pending motion for ruling, and neither appellant nor appellee reference this decision in the present appeal.

5.

{¶ 12} On January 2, 2020, appellant moved for judgment notwithstanding the verdict. Appellee filed opposition on January 16, 2020. The trial court denied this motion on April 17, 2020, expressly incorporating the December 23 entry.

{¶ 13} On May 14, 2020, appellant filed a timely appeal.

### III. Assignments of Error

{¶ 14} In challenging the trial court's judgment, appellant asserts the following assignments of error:

I. The trial court erred by denying [appellant's] motion for summary judgment, as there was no evidence to support the finding that [appellant] deliberately intended to injure appellee.

II. The trial court erred by denying [appellant's] motion to strike the affidavit of Gerald Rennell during the summary judgment proceedings.

III. The trial court erred by permitting Gerald Rennell to testify at trial and provide opinion testimony on matters which were neither relevant nor probative of [appellant's] alleged intent to injure appellee.

IV. The trial court erred in finding the access window and the bolts affixed to the access window constituted equipment safety guards under R.C. 2745.01(C) and that [appellant] deliberately removed the access window and/or bolts, creating a rebuttable presumption that [appellant] intended to injure appellee.

6.

V.  The trial court erred by denying [appellant's] motion for directed verdict at the close of plaintiff's case in chief.

VI.  After the close of [appellant's] case, the court erred in finding the access window was an equipment safety guard under R.C. 2745.01(C), that [appellant] deliberately removed the access window, and that [appellant] failed to adequately rebut the presumption [appellant] intended to injure appellee.

VII.  The trial court erred by instructing the jury that [appellant] deliberately removed an equipment safety guard and to presume [appellant] removed and equipment safety guard with the intent to injure appellee.

VIII.  The trial court erred by denying [appellant's] motion for judgement notwithstanding the verdict.

### IV.  Analysis

{¶ 15} We address appellant's assignments of error out of order for clarity. Because the trial court considered the affidavit in ruling on the motion for summary judgment, we address the assigned error concerning the affidavit first.

### A.  Motion to Strike Affidavit

{¶ 16} In its second assignment of error, appellant argues that the trial court erred by denying appellant's motion to strike the affidavit of Gerald Rennell.  A trial court's decision to deny a motion to strike will not be overturned absent abuse of discretion. *Bank of Am., N.A. v. Hizer*, 6th Dist. Lucas No. L-13-1035, 2013-Ohio-4621, ¶ 16, citing

*State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 10.  Abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable.  *Wilkinson* at ¶ 10.

{¶ 17} An affidavit offered in support of or in opposition to a motion for summary judgment must comply with Civ.R. 56 and the Rules of Evidence regarding expert opinion testimony.  *Warren v. Libbey Glass, Inc.*, 6th Dist. Lucas No. L-09-1040, 2009-Ohio-6686, ¶ 13.  Civ.R. 56(E) states that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Under Evid.R. 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."  Additionally, Evid.R. 705 states that an "expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data."  These rules require that affidavits set forth facts, not legal conclusions.  *Warren* at ¶ 15, citing *Youssef v. Parr, Inc.*, 69 Ohio App.3d 679, 689, 591 N.E.2d 762 (8th Dist.1990).

{¶ 18} In construing the statute at issue, this court previously held that the interpretation of the words "equipment safety guard" and "deliberate removal" in R.C. 2745.01 are specific questions of law, not questions of fact.  *Fickle v. Conversion Techs. Int'l, Inc.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, ¶ 25.  Further, "such terms are not susceptible to definition by an expert witness."  *Id.* at ¶ 26.  Thus, this court

8.

held that "the meaning of the terms 'equipment safety guard' and 'deliberate removal' in R.C. 2745.01(C) [are] to be ascertained as a matter of law by the court, and that the testimony of [an expert witness] is irrelevant to that determination." *Id.* at ¶ 28.

{¶ 19} Moreover, we have previously found that a trial court did not err in striking an expert affidavit in an employer intentional tort case. In *Warren v. Libbey Glass, Inc.*, 6th Dist. Lucas No. L-09-1040, 2009-Ohio-6686, we held that the trial court did not abuse its discretion in striking an expert affidavit of Gerald Rennell. The trial court gave various reasons for striking statements in the affidavit and ultimately struck the entire affidavit because it was comprised of improper statements. *Id.* at ¶ 18. Significantly, this court found that the expert made improper legal conclusions as to ultimate issues in the case. *Id.* at ¶ 18, 23. Several statements in the affidavit gave opinions on "defendant's knowledge or awareness of the dangerous nature of a process or machine" which was an ultimate issue in the case. *Id.* at ¶ 23. Thus, in part because the affidavit was made up of improper legal conclusions, we found the trial court did not abuse its discretion in striking the affidavit.

{¶ 20} Other districts have decided similarly in cases where a trial court struck an expert affidavit. Although these cases did not involve employer intentional torts, they did concern specific, statutorily defined words as in the instant case. In *Hinkston v. Sunstar Acceptance Corp.*, 1st Dist. Hamilton No. C-990681, C-990701, 2000 WL 1886388, *6 (Dec. 29, 2000), the First District Court of Appeals found that the trial court did not abuse its discretion in striking two expert affidavits that contained legal conclusions regarding

9.

the definition of a specific word in the statute at issue. The court determined that "[b]oth experts, overstepping their bounds, drew legal conclusions regarding the definition of 'cash price' under ORISA." *Id.* This was an improper attempt to have an expert interpret a statute, thus the affidavits were properly stricken. *Id.*, citing *Dawson v. Williamsburg of Cincinnati Mgt. Co.*, 1st Dist. Hamilton No. C-981022, 2000 WL 125891 (Feb. 4, 2000).

{¶ 21} Additionally, in *State ex rel. Simmons v. Geauga Cty. Dept. of Emergency Servs.*, 131 Ohio App.3d 482, 493, 722 N.E.2d 1063 (11th Dist.1998), the Eleventh District Court of Appeals determined that several expert affidavits were not admissible evidence, as they were comprised of conclusory statements finding that certain things met the definition of a phrase in the statute at issue. The statute at issue in the case defined the term "countywide public safety communications systems." *Id.* Appellee offered affidavits that contained "conclusory statements concerning what equipment constitutes the public safety communications system." *Id.* The court determined that the construction of the statute was a question of law and therefore the expert opinion was "not admissible to 'assist' the court in making its decision." *Id.*, citing *Sikorski v. Link Elec. & Safety Control Co.*, 117 Ohio App.3d 822, 691 N.E.2d 749 (8th Dist.1997).

{¶ 22} Here, the expert affidavit specifically opined that the employer deliberately removed a safety guard. In it, Gerald Rennell stated "what is clear is that the decision to remove this equipment guard in this instance came as a result of deliberate, intentional, and volitional actions." With this affidavit, appellee attempted to establish that appellant deliberately removed an equipment safety guard. However, the interpretation and

10.

meaning of these phrases from R.C. 2745.01 is a question of law for the court to determine, not a question of fact for which expert testimony would be permissible. *Fickle* at ¶ 25. Further, Civ.R. 56 and the Rules of Evidence regarding expert opinion testimony require affidavits to set forth facts and not legal conclusions. *Warren*, 6th Dist. Lucas No. L-09-1040, 2009-Ohio-6686, at ¶ 15, citing *Youssef v. Parr*, *Inc.*, 69 Ohio App.3d 679, 689, 591 N.E.2d 762 (8th Dist.1990). Thus, the expert affidavit, comprised of legal conclusions regarding statutory terms, is impermissible, and the trial court abused its discretion in denying appellant's motion to strike the expert affidavit.

{¶ 23} Accordingly, appellant's second assignment of error is well-taken.

## B. Summary Judgment

{¶ 24} In its first assignment of error, appellant argues that the trial court erred in denying its motion for summary judgement. On appeal, the standard of review for denial of a motion for summary judgement is de novo. *Zuniga v. Norplas Industries*, 2012-Ohio-3414, 974 N.E.2d 1252, ¶ 11 (6th Dist.). The appellate court will employ the same standard as the trial court, without deference to it. *Mike McGarry & Sons, Inc. v. Constr. Resources One, LLC*, 2018-Ohio-528, 107 N.E.3d 91, ¶ 56 (6th Dist.).

{¶ 25} The standard for summary judgment is set forth in Ohio Civil Rule 56(C), which provides in relevant part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there

11.

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 26} "[T]he moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party has satisfied the initial burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* at 293.

{¶ 27} The specific, relevant statute for this matter, R.C. 2745.01, provides in part:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

12.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶ 28} "[T]he General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to subsections (C) * * *." *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. Under R.C. 2745.01(C), if the employee shows that the employer deliberately removed an equipment safety guard, the employee is entitled to a rebuttable presumption that there was intent to injure. In the instant case, appellee argued that subsection C applied to warrant the presumption of intent to injure.

{¶ 29} As noted by this court in *Fickle*, "[t]he General Assembly has not provided a definition of 'equipment safety guard' or 'deliberate removal' for purposes of R.C. 2745.01(C)." *Fickle*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960 at ¶ 24. Thus, interpretation of these undefined statutory terms are a question of law, not a

13.

question of fact. *Id.* at ¶ 25. Further, "such terms are not susceptible to definition by an expert witness." *Id.* at ¶ 26.

{¶ 30} The Ohio Supreme Court held that the term "equipment safety guard" "means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 2. Not all safety equipment in a workplace will be considered an "equipment safety guard." *Id.* at ¶ 24 ("[t]o construe 'equipment safety guard' to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts.").

{¶ 31} Further, the "'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard.'" *Id.* "Deliberate removal" of a safety guard requires evidence demonstrating a "careful and thorough decision to get rid of or eliminate an equipment safety guard." *Id.* at ¶ 29. "Although 'removal' may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard." *Id.* at ¶ 29, citing *Fickle* at ¶ 45.

{¶ 32} In this case, the trial court denied summary judgment and determined there were issues of fact regarding "deliberate removal," based on "an expert affidavit by

14.

Gerald Rennell opining that the guard at issue was deliberately removed by [appellant]." However, in finding issues of fact remained as to "deliberate removal," based on expert opinion, the trial court failed to determine the issue of law concerning the meaning of "equipment safety guard," relative to the facts in this case.

{¶ 33} While there is not an exact consensus as to what qualifies as an "equipment safety guard," several Ohio courts have made case specific determinations regarding objects that do and do not constitute "equipment safety guards." In a Third District Court of Appeals case, the court found that a hand guard on a chainsaw was an equipment safety guard designed to protect employees by describing its function: "[i]f a kickback occurs, causing the operator to lose control of the chainsaw, the hand guard triggers the saw's brake when contacted. This act prevents the operator from being cut by the saw." *Thompson v. Oberlanders Tree & Landscape, LTD.*, 2016-Ohio-1147, 62 N.E.3d 630, ¶ 31 (3d Dist.).

{¶ 34} In regard to objects that do not constitute an "equipment safety guard," the Ohio Supreme Court has ruled that safety devices such as orange cones, reflective vests, and retractable gates are not equipment safety guards. *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 27. That court also "declined to accept cases in which appeals courts determined that the following were not equipment safety guards: a trench box designed to protect workers from a trench collapse; a jib crane and an observation platform (part of a system of safety devices implemented on a tire shredder); and a tire bead and bead taper, parts of a wheel

15.

assembly unit." *Turner v. Dimex*, LLC, 2019-Ohio-4251, 147 N.E.3d 35, ¶ 13 (4th Dist.), citing *Barton v. G.E. Baker Constr.*, 9th Dist. Lorain No. 10CA009929, 2011-Ohio-5704; *Downard v. Rumpke of Ohio, Inc.*, 2013-Ohio-4760, 3 N.E.3d 1270 (12th Dist.); *Roberts v. RMB Enters.*, 197 Ohio App.3d 435, 2011-Ohio-6223, 967 N.E.2d 1263 (12th Dist.).

{¶ 35} These cases are illustrative of what does *not* constitute an "equipment safety guard" and can provide guidance in this court's analysis as to whether the modified lift guard constitutes such a safety device as defined within the statute. The modified lift apron with the added bolts on the access window can be fairly characterized to be part of a system of implemented safety devices. The access window itself would not be a safety device as it was designed to allow the operator to see inside the machine and it was designed to open and close, for access to the inside of the machine. Two of the lift aprons were modified with bolts following the 2013 accident to help prevent a similar incident, but the addition of bolts to the access window did not transform the access window into an equipment safety device.

{¶ 36} The spare lift apron did not have any modifications from the original design, and instead, simply utilized the originally designed latch mechanism to secure the access window. This original latch design is certainly not "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Hewitt*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, at ¶ 2. Furthermore, the added bolts on the modified lift aprons did not prevent an employee from opening the access

16.

window, they simply made it more difficult to do so. The purpose and design of the access window was to allow an employee to open it, and this purpose was not changed with the addition of bolts.

{¶ 37} While there is no bright line rule established by R.C. 2745.01 or case law to determine what objects constitute an "equipment safety guard," we find that the modified lift apron at issue in the current case is not an equipment safety guard. Considering the fact that a trench box specifically designed to protect employees and parts of a system of safety devices implemented on a tire shredder do not constitute equipment safety guards, a lift apron designed to see inside of and allow access to a machine does not become an object designed to shield the employee simply because bolts were added to it. *See Turner* at ¶ 13, citing *Barton* and *Downard*. A determination that the modified lift apron with bolts on the access window constitutes an equipment safety guard would "ignore[] not only the meaning of the words used [in the employer intentional tort statute] but also the General Assembly's intent to restrict liability for intentional torts." *Hewitt* at ¶ 24.

{¶ 38} "A broad interpretation of the phrase does not comport with the General Assembly's efforts to restrict liability for intentional tort by authorizing recovery '*only* when an employer acts with specific intent.'" *Id.* at ¶ 25, quoting *Stetter v. R.J. Corman Derailment Servs.*, *L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 26 (emphasis in original). Again, it is important to note that not every "generic safety-related item" constitutes an equipment safety guard. *Id.* at ¶ 24.

17.

{¶ 39} We decline to broaden R.C. 2745.01 beyond the limits intended by the legislature by holding that the modified lift apron is an equipment safety guard, especially in light of the evidence relevant to this appeal. In the instant case, the only evidence appellee offered to show that the modified lift apron constitutes an equipment safety guard was the expert testimony of Gerald Rennell. In its denial of appellant's motion for summary judgement, the trial court specifically relied on the affidavit of Rennell by stating "[appellee] filed an expert affidavit by Gerald Rennell opining that the guard at issue was deliberately removed by [appellant]." However, as we have already determined that this affidavit should have been stricken, it should not have been considered by the trial court in its analysis of the motion for summary judgment. Without the affidavit, appellee presented no evidence that the modified lift apron is an equipment safety guard. Accordingly, we find that the modified lift apron does not constitute an equipment safety guard based upon our own interpretation of the applicable statute.

{¶ 40} Given that we have determined that the modified lift apron is not an equipment safety guard, appellee was not entitled to the presumption that removal of an equipment safety guard was committed with an intent to injure. R.C. 2745.01(C). We now turn to the question of whether there was any evidence to show deliberate intent to harm appellee, as appellee argued that R.C. 2745.01(A) applied to this case.

{¶ 41} The Ohio Supreme Court has stated "absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system."

18.

*Houdek*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, at ¶ 25. "An injured employee cannot recover for an on the job injury unless he or she demonstrates that the employer acted with 'a conscious or deliberate intent directed toward the purpose of inflicting an injury.'" *Forwerck v. Principle Business Ents.*, 6th Dist. Wood No. WD-10-040, 2011-Ohio-489, ¶ 10, quoting *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 100.

{¶ 42} In determining whether appellee proved deliberate intent to injure by appellant, it is helpful to consider cases that have confronted this issue. The instant case can be compared to other cases where there was a lack of evidence to show deliberate intent to injure. In *Houdek*, the Ohio Supreme Court found that the employer may have placed the employee in a potentially dangerous situation, but that fact does not demonstrate that there was deliberate intent to injure the employee. *Houdek* at ¶ 26. The employee presented no evidence that the employer deliberately intended to injure him when management directed him to work in the area where he sustained injury. *Id.* The court asserted that the employee's injuries were "the result of a tragic accident, and at most, the evidence shows that this accident may have been avoided had certain precautions been taken." *Id.* at ¶ 28. But there was no liability for the employer because the employee did not prove the intent element. *Id.*

{¶ 43} Additionally, in a Seventh District Court of Appeals case, the court held that an employer's failure to place guardrails around a perch and scaffolding was not deliberate removal as the guardrails were never in place and were not required or

19.

provided by the manufacturer. *Wineberry v. N. Star Painting Co.*, 2012-Ohio-4212, 978 N.E.2d 221, ¶ 39 (7th Dist.). This is analogous to the current case, as the spare lift apron on the machine at the time of appellee's injury was never modified to include added bolts like the other two lift aprons appellant maintained. There is also no indication that the bolts were provided or required by the manufacturer.

{¶ 44} While it may be true that the injury in this case could have been avoided if certain precautions had been taken, case law is clear that such facts do not establish the "intent to injure" element of the statute. In this case, there is no evidence that appellant intended to injure appellee. The fact that appellant failed to bolt down the spare lift apron may constitute some level of negligence, but it is equally clear that negligent conduct does not support a claim based on an intentional tort. *See Stetter*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, at ¶ 66 ("[a]n employee who cannot demonstrate deliberate intent under R.C. 2745.01 has the same status as an employee injured by the negligence of his employer. Both employees must seek recovery pursuant to Ohio's workers' compensation statutes."); *Houdek* at ¶ 23, quoting *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 100 ("liability of the employer cannot * * * be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence * * * or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.").

20.

{¶ 45} Given that the modified lift apron does not constitute an equipment safety guard and there was no evidence of intent to injure appellee, the trial court erred in denying appellant's motion for summary judgment. Because summary judgment should have been granted in appellant's favor, this case should not have been given to a jury. Therefore, the judgment in favor of appellee is vacated.

{¶ 46} Accordingly, appellant's first assignment of error is well-taken. As resolution of the first assignment of error is dispositive, all remaining assignments of error are therefore denied as moot.

## V. Conclusion

{¶ 47} For the foregoing reasons, the judgment of the trial court, denying appellant's motion for summary judgment, is reversed. We therefore vacate the judgment entered in favor of appellee and enter judgment for appellant. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

21.

Mark L. Pietrykowski, J.          _____
                                                         JUDGE

Christine E. Mayle, J.

                                   _____

Gene A. Zmuda, P.J.                                          JUDGE
CONCUR.

                                   _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.